

MAR 1 2 2018

Clerk, U S District Court
District Of Montana
Billings

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| DIANA NICHOLS,<br><br>Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,<br><br>Defendant. | CV 16-71-BLG-SPW<br><br>**ORDER** |

On June 8, 2016, Plaintiff Diana Nichols ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") regarding the denial of Plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433, 1381-1383f. (Doc. 1.) On August 15, 2016, the Commissioner filed an Answer (Doc. 10) and the Administrative Record ("A.R."). (Doc. 11).

Presently before the Court is Plaintiff's motion for summary judgment, seeking reversal of the Commissioner's denial and remand for further

administrative proceedings.  (Doc. 18.)  The motion is fully briefed and ripe for the

Court's review.  (Docs. 23, 24.)

For the reasons set forth herein, and after careful consideration of the record

and the applicable law, the Court finds the case should be **REMANDED** for

further administrative proceedings.

## I.     PROCEDURAL BACKGROUND

On October 2, 2012, Plaintiff filed an application for DIB and SSI benefits,

which is the subject of this action.  (A.R. 110-123.)  Plaintiff alleged she became

unable to work on July 19, 2012.  (A.R. 117.)  The Social Security Administration

denied Plaintiff's application initially on June 7, 2013, and upon reconsideration on

October 7, 2013.  (A.R. 70-83; 84-107.)  On October 16, 2013, Plaintiff filed a

written request for a hearing.  (A.R. 142-43.)  Administrative Law Judge Michael

A. Kilroy (the "ALJ") held a hearing on September 18, 2014.  (A.R. 29-69.)  On

December 18, 2014, the ALJ issued a written decision finding Plaintiff not

disabled.  (A.R. 9-24.)  Plaintiff requested review of the decision on January 7,

2015.  (A.R. 5.)  The ALJ's decision became final on April 11, 2016, when the

Appeals Council denied Plaintiff's request for review.  (A.R. 1-3.)  Thereafter,

Plaintiff filed the instant action.

Plaintiff argues the ALJ committed reversible error by failing to include in the residual functional capacity ("RFC") finding any limitations based on her documented hearing impairment, sleep apnea, depression, and COPD.

## II.    LEGAL STANDARDS

### A.    Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision. 42 U.S.C. §§ 405(g), 1383(c)(3). The scope of judicial review is limited. The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to

support a conclusion." *Flaten*, 44 F.3d at 1457. In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)). The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). However, even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

## B.   Determination of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) she suffers from a medically determinable physical or

mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work she previously performed, or any other substantial gainful employment which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). A claimant must meet both requirements to be classified as disabled. *Id.*

The Commissioner makes the assessment of disability through a five-step sequential evaluation process. If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)). The five steps are:

1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

Although the ALJ must assist the claimant in developing a record, the claimant bears the burden of proof during the first four steps, while the Commissioner bears the burden of proof at the fifth step. *Tackett*, 180 F.3d at 1098, n.3 (citing 20 C.F.R. § 404.1512(d)). At step five, the Commissioner must "show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100 (quoting 20 C.F.R. § 404.1560(b)(3)).

## III. FACTUAL BACKGROUND

Plaintiff claims to suffer from severe impairments of obstructive sleep apnea status post tracheostomy, peripheral neuropathy, chronic obstructive pulmonary disorder ("COPD"), degenerative joint disease of the knee and lumbar spine, scoliosis of the lumbar spine, morbid obesity, hearing loss, and depression. She

asserts that these impairments render her incapable of performing work she previously performed, or any other substantial gainful employment.

## A. The Hearing

A hearing was held before the ALJ on September 18, 2014, and the following testimony was provided. (A.R. 29-69.)

### 1. Plaintiff's Testimony

Plaintiff testified she lives with her niece and her niece's three children, ages 7, 12, and 14. (A.R. 35.) Plaintiff stated that she lost her last job, where she was doing data entry, because she could not keep up with the required daily quota due to neuropathy in her hands. (*Id.*) Plaintiff testified that she has pain in her back that limits her ability to stand, sit and walk. (A.R. 39-40.) She also experiences neuropathy in her legs, ankles, feet and hands. (A.R. 42-44.) As for daily activities, Plaintiff indicated she can do some laundry and load the dishwasher, but can't bend down, do any heaving cleaning, or stand and cook a meal. (A.R. 48.) Plaintiff is able to pick her niece up from school, drive her son to work, and go grocery shopping. (A.R. 49-50.)

Plaintiff testified that she does not have difficulty breathing unless she walks a lot, and indicated she felt breathing was not "a big deal." (A.R. 46.) Plaintiff

said she has severe sleep apnea, and has a trach in her throat. (A.R. 46-47.)
Plaintiff stated that as a result she does not sleep very well. (A.R. 47.) Plaintiff
also said that she takes medication for depression, but does not see a counselor,
and feels she is still able to function socially. (A.R. 51.)

Plaintiff testified that she was involved with vocational rehabilitation, and
they helped her get hearing aids. (A.R. 38.) Plaintiff stated that she does not
watch much television because she cannot hear it very well, even with her hearing
devices. (A.R. 49.) Several times during the hearing, Plaintiff responded in a way
that indicated she had not clearly heard the ALJ's questions. (*See* A.R. 34
("Pardon?"), 37 ("Pardon?"), 57 ("I'm sorry, I didn't hear that").)

2.    Vocational Expert's Testimony

Delane Hall, a Vocational Expert ("VE"), also testified before the ALJ.
(A.R. 61-68.) The ALJ asked Mr. Hall three hypothetical questions. All of the
ALJ's hypotheticals addressed limitations with regard to sitting, standing, walking,
lifting, manipulative activities, and postural activities. (A.R. 63-66.) The
hypotheticals also included consideration of environmental factors such as
exposure to cold, vibrations and uneven work surfaces. (A.R. 64.) None of the
ALJ's hypothetical questions addressed limitations regarding communicative or

mental impairments, or the ability to tolerate environmental factors relating to lung

irritants or breathing. Likewise, none of the hypothetical questions posed by

Plaintiff's counsel addressed communicative, mental or environmental limitations.

Mr. Hall testified Plaintiff could perform occupations such as appointment clerk,

customer service clerk, and receptionist. (A.R. 65.)

## B.  Medical Evidence

The administrative record includes Plaintiff's medical records from several

health care providers. The Court has summarized only those records that are

relevant to the specific issues presented for review.

### 1.  Medical Evidence Relating to Hearing Impairment

On June 16, 2010, Plaintiff was evaluated by Dr. Eric B. Schubert, M.D., at

Billings Clinic relating to her low back and leg pain. (A.R. 494-99.) Dr. Schubert

noted in his review of symptoms that Plaintiff was "positive for hearing loss and

ringing in the ears." (A.R. 494.)

On July 5, 2013, Plaintiff saw Dr. Christopher Miller, M.D. at Riverstone

Health because she was having a hard time hearing. (A.R. 333.) Plaintiff reported

having problems hearing certain letters and sounds. (*Id.*) Dr. Miller noted Plaintiff

was having difficulty "even with talking on the phone." (*Id.*) Dr. Miller referred Plaintiff to audiology. (*Id.*)

On July 12, 2013, Plaintiff saw Audiologist Kristy Foss, MCSD at Billings Clinic for an evaluation of her hearing acuity. (A.R. 343-46.) Plaintiff's test results showed she had "mild to profound sensorineural hearing loss bilaterally," and the loss was fairly symmetrical. (A.R. 343.) However, her word understanding score were good bilaterally. (*Id.*) It was determined that Plaintiff was a good candidate for amplification, but Plaintiff did not feel she could afford hearing aids. (*Id.*)

On September 17, 2013, Plaintiff had a follow up appointment with Dr. Miller regarding her hearing. (A.R. 374-75.) Dr. Miller noted plaintiff had sensorineural hearing loss of both hears, and audiology recommended amplification, but Plaintiff did not have financial resources for hearing aids. (A.R. 375.)

On March 3, 2014, Plaintiff saw Dr. Miller for back pain. (A.R. 353.) At that time, Dr. Miller stated that Plaintiff had trouble hearing, and that she "feels limited in her ability to work based on this." (A.R. 353.) Dr. Miller again noted that Plaintiff was unable to afford hearing aids. (*Id.*)

On March 27, 2014, Plaintiff returned to see the Audiologist Kristy Foss. (A.R. 432.) Ms. Foss noted that vocational rehabilitation had approved Plaintiff's hearing aid request. (*Id.*) Therefore, Ms. Foss took impressions for bilateral hearing aids, and noted that she would see Plaintiff as soon as the hearing aids arrived. (*Id.*) There are no further records indicating Plaintiff was seen for follow up after receiving the hearing aids, or that the efficacy of the hearing aids was tested.

Non-examining physician, Dr. William Fernandez, M.D. opined that Plaintiff had communicative limitations. (A.R. 93.) Dr. Fernandez stated Plaintiff had limited hearing in both ears, and needed to avoid loud noises and needs to work in an environment without a lot of ambient noise. (*Id.*)

2.    Medical Evidence Relating to Sleep Apnea and Depression

Plaintiff had an elective tracheostomy in December 2003 due to severe obstructive sleep apnea. (A.R. 292, 625.) Plaintiff was dependent on the tracheostomy for sleep. (A.R. 293.) In May 2009, Plaintiff sought treatment because she was having problems with the tracheostomy, and was not sleeping well. (A.R. 293.) In October 2012, Plaintiff again reported experiencing sleep disturbance. (A.R. 294.) Plaintiff indicated that she had extreme daytime

hypersomnolence. (*Id.*) She started to fall asleep at work, lost productivity, and was let go from her job. (*Id.*)

On November 16, 2012 and November 28, 2012, Dr. Miller noted that Plaintiff had moderate depression. (A.R. 312, 315.) Depression screenings indicated Plaintiff was having sleeping problems, feeling tired, hopeless, and having little energy. (*Id.*) Plaintiff again reported having problems falling asleep in June 2013. (A.R. 335.) In May 2014, it was noted that Plaintiff "struggles with some depression." (A.R. 401.)

On June 2, 2014, Plaintiff saw Dr. Mathew Westmark, M.D. at Riverstone Health. (A.R. 350-352.) Dr. Westmark noted Plaintiff had a history of depression that was controlled with citalopram, but he took her off that medication for chronic pain reasons and started Cymbalta instead. (A.R. 351.) Plaintiff saw Dr. Westmark for a follow-up appointment on June 23, 2014, and reported that her depression was improved on Cymbalta. (A.R. 349.)

### 3. Medical Evidence Relating to COPD

On November 9, 2012, Plaintiff saw Seth Wilson, PA-C at Riverstone Health for a cough. (A.R. 309-311.) Mr. Wilson noted Plaintiff had diffuse course

breath sounds, mild labored breathing, and decreased air movement. (A.R. 310.) Plaintiff was treated for a COPD exacerbation. (*Id.*)

On February 19, 2013, Plaintiff saw Dr. Miller and was assessed with bronchitis and a spirometry test was ordered. (A.R. 340-342.) The spirometry report showed moderate airway obstruction and low vital capacity. (A.R. 342.)

On May 23, 2013, Plaintiff had a follow-up appointment with Dr. Miller regarding the results of the spirometry test. (A.R. 337-339.) Dr. Miller diagnosed Plaintiff with COPD and prescribed Spiriva. (A.R. 338.)

On October 24, 2013, Plaintiff was treated for a COPD exacerbation. (A.R. 368-369.)

Non-examining physician, Dr. Tim Schofield, M.D. issued an opinion on June 7, 2013 that stated Plaintiff was limited to sedentary work due in part to her moderate COPD. (A.R. 81.) Dr. Schofield also stated Plaintiff cannot walk at a normal pace due to her breathing limitations and obesity. (*Id.*) Non-examining physician, Dr. Fernandez, also opined that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, etc. due to her COPD. (A.R. 94.)

/ / /

/ / /

## C. The ALJ's Findings

The ALJ followed the five-step sequential evaluation process in considering Plaintiff's claim. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 19, 2012. (A.R. 11.) Second, the ALJ found that Plaintiff has the following severe impairments: "severe obstructive sleep apnea, status post tracheostomy, peripheral neuropathy, chronic obstructive pulmonary disorder, degenerative joint disease of the knee, degenerative disc disease of the lumbar spine, scoliosis of the lumbar spine, and morbid obesity." (*Id.*) The ALJ also noted that Plaintiff had been diagnosed with bilateral hearing loss and depression. (A.R. 12.) However, the ALJ did not find Plaintiff's hearing loss or depression were severe impairments. (*Id.*) The ALJ stated Plaintiff's hearing loss was correctable, and she was able to obtain hearing aids through vocational rehabilitation. (*Id.*) With regard to depression, the ALJ found Plaintiff had at most "only mild limitation" in "concentration persistence or pace." (*Id.*) Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any one of the impairments in the Listing of Impairments. (A.R. 12-13.) Fourth, the ALJ found that Plaintiff has the residual functional capacity to:

perform sedentary work as defined in 20 CFR 404.1567(a) and
416.967(a), lifting up to 10 pounds on an occasional basis, and less
than 10 pounds frequently. The claimant is limited to walking 1-2
blocks at a time, standing for 30 minutes at a time and being on her
fee no more than 2 hours total in an 8 hour day. The claimant is
unable to climb ladders, ropes or scaffolds or crawl, seldom stoop or
crouch, and can perform all other postural activity only occasionally.
She must avoid concentrated exposure to extreme cold and vibrations
and must avoid having to walk on or work on uneven surfaces for
more than an occasional basis. The claimant is unable to use her
bilateral upper extremities on a repetitious basis, but is able to use
them frequently. Finally, she is limited to pushing or pulling with her
lower extremities on no more than an occasional basis.

(A.R. 14-15.)

The ALJ also found that Plaintiff is unable to perform any of her past

relevant work. (A.R. 22-23.) Fifth, the ALJ found that considering Plaintiff's age,

education, work experience, and RFC, Plaintiff has acquired work skills from past

relevant work that are transferable to other occupations with jobs that exist in

significant numbers in the national economy. (A.R. 23-24.) Thus, the ALJ found

that Plaintiff was not disabled. (A.R. 24.)

## IV. DISCUSSION

Plaintiff argues that the ALJ erred by failing to incorporate all of her

limitations into the RFC finding and corresponding hypothetical questions to the

VE. Therefore, Plaintiff contends the VE's testimony is not supported by

15

substantial evidence. Specifically, Plaintiff argues the ALJ failed to include any limitations on Plaintiff ability to: (1) listen and communicate effectively in the workplace in light of her documented hearing impairment and tracheostomy; (2) stay focused and alert during the workday in light of her sleep apnea and depression, as well as the ALJ's own acknowledged limitation in Plaintiff's concentration, persistence and pace; and (3) tolerate exposure to lung irritants in view of her COPD.

The Commissioner argues the ALJ did not err because he reasonably considered and took into account all credible limitations that were supported in the record.

## A. The ALJ's RFC Finding

The RFC determination is performed at step four of the sequential evaluation process. 20 C.F.R. § 404.1545(a)(5)(i). The RFC represents the most the claimant can do in a work setting despite the claimant's physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). In assessing the RFC, the ALJ must consider the "limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may –

when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim." SSR 96-8P, 1996 WL 374184, * 5 (S.S.A. July 2, 1996). *See also* 20 C.F.R. § 404.1545(e); *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008) ("The ALJ is required to consider all of the limitations imposed by the claimant's impairments, even those that are not severe.").

When a claimant's impairments are supported by substantial evidence in the record, the ALJ must either consider them in the RFC or cite reasons for excluding them. *See Robbins v. Social Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). The ALJ may not simply ignore them. *Id.* (stating the ALJ "is not free to disregard properly supported limitations."). *See also Hassan v. Colvin*, 2015 WL 2358023, *2-3 (N.D. Cal. May 15, 2015) (where an impairment was well-documented in the record, the ALJ erred by failing to address it without explanation). If, however, the claimed limitations are not supported by substantial evidence in the record, it is proper for the ALJ to exclude them from the RFC and the subsequent hypothetical questions to the VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001) (finding an ALJ did not err by omitting limitations from a hypothetical question to the VE where there was no evidence the limitations were severe enough to interfere with the claimant's ability to work).

Here, the record contains substantial evidence that Plaintiff has documented bilateral hearing loss, and suffers from depression, sleep apnea, and COPD. However, the ALJ failed to consider these impairments in the RFC or explain why they were excluded. This was error.

With regard to Plaintiff's hearing loss, the ALJ stated Plaintiff's hearing was correctable (A.R. 12), but there is no evidence in the record that her hearing has in fact been corrected. It does not appear Plaintiff's hearing was tested after she received her hearing aids. Indeed, it appears she may still suffer from some hearing deficit. Plaintiff testified that she does not hear well enough to watch television even with her hearing aids, and at several points during the hearing, she asked the ALJ to repeat questions. (A.R. 34, 37, 49, 57.) Therefore, even though the ALJ found Plaintiff's hearing loss was not severe (a point Plaintiff does not contest), the ALJ was still required to consider whether any residual limiting effects of her hearing impairment, in combination with her other severe impairments, affected her ability to work. Likewise, although the ALJ determined Plaintiff's depression was not severe (A.R. 12), the ALJ was nevertheless obligated to consider it in connection with Plaintiff's other documented severe limitations.

With regard to Plaintiff's sleep apnea and COPD, the ALJ determined these conditions were severe. (A.R. 11.) Yet, the ALJ did not account for any limitations caused by these conditions in the RFC. Nor did the ALJ provide any basis for his implicit conclusion that Plaintiff is not limited by her sleep apnea or COPD. Both conditions are documented in the record, and the reviewing physician indicated Plaintiff had an environmental limitation due to her COPD. (A.R. 94.) Although "a finding of a severe impairment does not presumptively lead to any particular work limitation," it cannot "simply be ignored without explanation." *Hassan v. Colvin*, 2015 WL 2358023, \*2 (N.D. Cal. May 15, 2015). Therefore, the ALJ was required to either address the effects of Plaintiff's sleep apnea and COPD or explain why they gave rise to no additional limitations.

### C. The ALJ's Failure to Incorporate Impairments into Hypothetical Questions Posed to the Vocational Expert.

If a claimant shows she cannot return to previous work, the burden of proof shifts to the Secretary at step five to show that the claimant can do other kinds of work. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). The Secretary may use a vocational expert to meet that burden. *Id.* Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant. *Id.* "The testimony of a vocational expert 'is valuable only to

19

the extent that it is supported by medical evidence.'" *Magallanes*, 881 F.2d 747, 756 (9th Cir. 189) (quoting *Sample*, 694 F.2d 639, 644 (9th Cir. 1982)). If the assumptions in the hypothetical are not supported by the record, then the vocational expert's opinion that the claimant has a residual working capacity has no evidentiary value. *Embrey*, 849 F.2d at 422. *See also Shumaker v. Astrue*, 657 F.Supp.2d 1178, 1180 (D. Mont. 2009) (holding where the ALJ's hypothetical questions did not accurately reflect the claimant's restrictions established by the medical record, "the ALJ's determination that [the claimaint] could perform other work existing in the national economy does not rest on substantial evidence").

As discussed above, the Court has determined the ALJ failed to adequately consider Plaintiff's limitations caused by her bilateral hearing loss, depression, sleep apnea, and COPD. Accordingly, these errors infected the hypothetical that the ALJ relied on, and in turn, the ALJ's determination at step five. Therefore, the Court finds the ALJ's determination at step five is not supported by substantial evidence.

/ / /

/ / /

/ / /

## V.   REMAND OR REVERSAL

Plaintiff asks the Court to remand this case further proceedings. "[T]he decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court." *Reddick v. Chater*, 157 F.3d at 728. If the ALJ's decision "is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

The Court finds remand for further proceedings is appropriate. On remand, the ALJ shall incorporate all of the limitations related to Plaintiff's bilateral hearing loss, depression, sleep apnea, and COPD in the RFC, or cite reasons for excluding them. In addition, the ALJ shall reconsider whether Plaintiff can perform work in the national economy based upon a hypothetical to the VE that incorporates of all the limitations supported by the record.

## VI. CONCLUSION

Based on the foregoing, **IT IS ORDERED** that the Commissioner's decision be **REVERSED** and this matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

**IT IS ORDERED**.

DATED this 12th day of March, 2018.

SUSAN P. WATTERS
United States District Judge